UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
RODNEY CRENSHAW,

                        Plaintiff,                        **MEMORANDUM DECISION
AND ORDER**

     -against-

                                                    O6 Civ. 2722 (GAY)

CITY OF MOUNT VERNON, et al.,
-------------------------------------------------------X

       Plaintiff Rodney Crenshaw commenced this action pursuant to 42 U.S.C. § 1983, wherein he alleges that the defendants violated his constitutional rights during the course of six separate encounters between plaintiff and members of the Mount Vernon Police Department. Presently before this Court is the defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("FRCP").[1] For the reasons that follow, defendants' motion is granted in part and denied in part.

**I. BACKGROUND**

       The following facts–taken in the light most favorable to plaintiff–are gleaned from the parties' statements pursuant to Local Civil Rule 56.1 of the United States District Courts for the Southern and Eastern Districts of New York, from the pleadings and from affidavits, affirmations and exhibits submitted by the parties in support of their contentions. Any disputes of material fact are noted.

     A. <u>The November 14, 2003 Incident</u>

       Just before noon on November 14, 2003, as plaintiff walked down 4th Avenue in Mount Vernon, he came upon his niece, Yvette Price, outside the Family Dollar store.

---

     [1] This action is before me for all purposes on the consent of the parties, pursuant to 28 U.S.C. §636(c).

Ms. Price was engaged in a loud argument with a store employee, Mr. McMurray. Some people had stopped and were listening to the argument. At some point, plaintiff began to argue with Mr. McMurray. Mount Vernon police officers Grolier and Guttman responded to the store to investigate the dispute. The parties offer divergent accounts of the events which followed.

Defendants allege the following: Plaintiff began to yell and scream at Mr. McMurray. The Officers approached Ms. Price and asked for identification; plaintiff stepped in between them, told Ms. Price "she didn't have to give them shit" and began pulling her away by the arm. More people began to gather as a result of plaintiff's yelling and screaming and Officer Guttman began to fear for his safety as the crowd formed. He told plaintiff to stop yelling and screaming and to stop preventing the officers from obtaining identification. Officer Guttman advised plaintiff that he would be arrested for disorderly conduct and obstructing governmental administration if he did not cease his activity and leave the scene. Plaintiff did not leave, and continued to yell and scream and prevent Ms. Price from providing identification. Officer Guttman arrested plaintiff for disorderly conduct and obstructing governmental administration.

According to plaintiff, however: Although he argued with Mr. McMurray, the argument was neither loud nor boisterous. Plaintiff's main concern was his niece, who was pregnant, and plaintiff was holding her arm and telling her to calm down. Plaintiff admits that, when an officer asked for Ms. Price's identification, plaintiff told her "she didn't have to give them shit." On the other hand, plaintiff denies physically stepping in between the officers and his niece in any way that would have impeded their questioning of Ms. Price. Plaintiff also maintains that he did not physically pull his niece

2

away from the officers. Plaintiff further avers that his actions did not cause people to gather around the scene; a crowd formed as a result of the argument between Ms. Price and Mr. McMurray. Plaintiff argues that the crowd became outraged because at least one person stated that they heard an officer call someone a "nigger." Plaintiff contends that, although he was told he would be arrested if he didn't leave, he was lawfully present and had committed no crime.

B. <u>The February 4, 2004 Incident</u>

On February 4, 2004 at approximately 3:30 p.m., plaintiff was on his way home from work and intended to stop at a Chinese restaurant on 3rd Street in Mount Vernon. As he walked up 4th Avenue, plaintiff stopped to talk with a friend, Gordon Tarrant.

On that day, the Mount Vernon narcotics squad had placed a team to investigate the sale of narcotics in the vicinity of 4th Avenue. Officer Kenneth Perry was the surveillance officer charged with identifying individuals involved in narcotics transactions and relaying said information to the "pick-up" teams.

Officer Perry observed plaintiff as he stopped to talk to Gordon Tarrant. Officer Perry radioed a description of plaintiff and Tarrant, and their location, to the "pick-up" teams. Plaintiff denies that his actions would have indicated that he and Tarrant were engaged in a drug transaction and argues that Officer Perry was mistaken. Plaintiff spoke with Tarrant for about five minutes and then continued walking to the Chinese restaurant.

Officer Hutchins and Detective Koehnlein, one of the "pick-up" teams, approached the corner of South 4th and West 3rd. According to the police report, Officer Hutchins observed Tarrant hand U.S. currency to plaintiff in exchange for a plastic straw

3

containing heroin, after which plaintiff began to walk east on 3rd Street.  Plaintiff denies receiving any currency from Tarrant and denies handing Tarrant a plastic straw.  Officer Hutchins and Detective Koehnlein arrested Tarrant, searched him and recovered a plastic straw containing heroin.

Officer Perry remained in his location in order to try and locate plaintiff.  Within minutes, Perry spotted plaintiff on 3rd Street and radioed another "pick-up" team, Officer Castelhano and Detective Vanderpool.  Perry informed them that he had observed plaintiff engaged in a narcotics transaction and provided his description and physical location.  Officer Castelhano and Detective Vanderpool arrested plaintiff in front of the Chinese restaurant, and transported him to headquarters.

C.  The March 3, 2004 Incident

At approximately 9:00 p.m. on March 3, 2004, plaintiff was standing in front of 218 South 3rd Avenue in Mount Vernon, talking with his friend, Carlton Ragland.  At some point, a third gentleman, Earl Todd, joined the conversation and he, plaintiff and Ragland engaged in a hand-to-hand transfer of money.

Officer Della Donna, on narcotics surveillance, observed the interaction between plaintiff, Todd and Ragland and believed it to be a drug transaction.  According to the police report, Officer Della Donna observed plaintiff take five rocks of crack cocaine from Ragland, walk over to Todd and hand him two rocks of crack cocaine, take money from Todd and walk over and hand money to Ragland.  Plaintiff admits he made change for an individual on the street, but denies any knowing participation in a drug transaction.

Officer Della Donna relayed his observations to Detectives Clark and Connley,

the "pick-up" team; Della Donna also provided a description of the three suspects, the location of the drugs on each of their persons and their direction of travel. Clark and Connley arrested Earl Todd first, and recovered two rocks of crack in red plastic bags from his front left pocket. Della Donna then directed Clark and Connley to 218 South Third Avenue, where they located plaintiff and Ragland. Detective Connley testified that, as the officers approached, Ragland began to walk northbound away from plaintiff, placed crack cocaine in his mouth and swallowed. Connley arrested Ragland and plaintiff.

D. The March 23, 2004 Incident

On March we, 2004, at approximately 3:30 p.m., plaintiff was in the vicinity of One Pathmark Plaza in Mount Vernon. At approximately the same time, Detective Thompson was on narcotics surveillance near Pathmark Plaza. Detective Thompson observed an interaction between plaintiff and Daniel Tolliver (aka "Dream"). Thompson saw Tolliver remove a plastic sandwich bag from his left front jacket pocket, from which he removed one rock of crack cocaine which he gave to plaintiff in exchange for U.S. currency. Plaintiff asserts that none of his actions could have construed as a drug transaction and that he was merely talking with Mr. Tolliver.

Detective Thompson radioed a description of plaintiff, and his direction of travel, to a "pick-up" team consisting of Detective Koehnlein, Officer Castelhano and Detective Driscoll. The team spotted plaintiff near the south entrance of Pathmark Plaza, pulled their vehicle over, exited the vehicle, approached plaintiff and identified themselves. Officer Castelhano noticed that plaintiff held rock cocaine in his right hand. Officer Castelhano observed plaintiff swallow the narcotics and tried, unsuccessfully, to remove

5

it from his mouth. Plaintiff denies he tried to swallow anything either before or after the police arrived and maintains he did not resist the officer's inspection of his mouth. The officers arrested plaintiff; he was transported to police headquarters where he was searched. The search was negative for contraband and, therefore, plaintiff was released.

  E. <u>The July 6, 2005 Incident</u>

On July 6, 2005, while on surveillance in the vicinity of 240 South Seventh Avenue in Mount Vernon, Detective Driscoll observed plaintiff and another black male exchange U.S. currency for narcotics. Detective Driscoll radioed the description of the purchaser, the other male, to the "pick-up" team, Detective Connley and Officer Hutchins. Connley and Driscoll were unable to locate the buyer. Driscoll then radioed a description of the seller and his approximate location. Connley and Driscoll spotted plaintiff, who was the only person in the vicinity who fit the description. As the officers approached plaintiff, Detective Connley observed plaintiff swallow something which Connley believed was narcotics. Plaintiff denies he swallowed narcotics and alleges that the officers stated that plaintiff "had just won two cases in trial" and "search this motherfucker." Connley and Hutchins searched plaintiff and the surrounding area but found no narcotics. Because the search yielded negative results, coupled with the fact that the buyer was not apprehended, plaintiff was not arrested. Plaintiff had been detained for approximately ten minutes.

  F. <u>The November 30, 2005 Incident</u>

On November 30, 2005 at approximately 9:10 p.m., plaintiff was in the vicinity of 150 South 5th Avenue in Mount Vernon. Officer Hutchins, while driving in the area,

spotted plaintiff and recalled that he had seen an active warrant for plaintiff's arrest about one week prior. Hutchins radioed headquarters to verify; headquarters responded that it was a possibility. Hutchins asked plaintiff to stop and indicated there may be a warrant for his arrest. Plaintiff claims he was detained for approximately twenty minutes, until headquarters informed Officer Hutchins that they could not locate the warrant. Plaintiff was then allowed to leave the area.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FRCP 56(c). Specifically, the party seeking summary judgment has the burden of demonstrating that no genuine issue respecting any material fact exists. LaFond v. General Physics Servs. Corp., 50 F.3d 165, 171 (2d Cir. 1995). If the moving party meets its burden, the burden shifts to the opposing party to come forward with "specific facts showing that there is a genuine issue for trial." FRCP 56(e).

When deciding a summary judgment motion, the court must resolve all ambiguities and draw all factual inferences in favor of the party opposing the motion. See McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999). The question is whether, in light of the evidence, a rational jury could find in favor of the nonmoving party. Gallo v. Prudential Residential Servs., Ltd. Partnership, 22 F.3d 1219, 1224 (2d Cir. 1994). Summary judgment must be denied, therefore, if the court finds "there are any genuine factual issues that properly can be resolved only by a finder of fact

7

because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, 477 U.S. 242, 250 (1986).

## III. JOHN AND JANE DOES 1-8

Plaintiff asserts claims against John and Jane Does 1-8 (unidentified members of the Mount Vernon Police Department). Pursuant to general principles of tort law, a "tort victim who cannot identify the tortfeasor cannot bring suit." See Valentin v. Dinkins, 121 F.3d 72, 75 (2d Cir. 1996). This same principle governs damages awarded under § 1983. See Carey v. Piphus, 435 U.S. 247, 257 (1978). Here, plaintiff had ample time to conduct discovery to identify the police officers responsible for his alleged injuries; discovery is now complete and plaintiff fails to identify any additional defendants. Nor does plaintiff assert that additional discovery or trial will reveal these defendants' identities. Accordingly, the claims against John and Jane Does 1-8 are dismissed.

## IV. MUNICIPAL LIABILITY AND OFFICIAL CAPACITY CLAIMS

Plaintiff seeks to hold the City of Mount Vernon liable for the alleged violations of his constitutional rights, on the grounds that the City was deliberately indifferent to plaintiff's safety and constitutional rights because the City inadequately hired, supervised, retained and trained its police officers. A municipality may be held liable pursuant to 28 U.S.C. § 1983 where the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 694 (1978).

Municipal liability may be premised on the municipality's failure to train its

8

employees "where that . . . failure to train reflects deliberate indifference to . . . constitutional rights." City of Canton v. Harris, 489 U.S. 378, 392 (1989). In order to prove that the municipality's failure to train amounted to "deliberate indifference," plaintiff must demonstrate three factors: (1) that "a policymaker knows 'to a moral certainty' that [its] employees will confront a given situation"; (2) that "the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation"; and (3) that "the wrong choice by the . . . employee will frequently cause the deprivation of a citizen's constitutional rights." Walker v. City of New York, 974 F.2d 293, 297-98 (2d Cir. 1992) (citation omitted).

Plaintiff's conclusory assertions notwithstanding, the record is devoid of evidence necessary to create an issue of fact that a municipal policy or custom led to the alleged violations of plaintiffs' constitutional rights. See Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir. 1995) (no municipal liability where the "record [was] devoid of any evidence from which a reasonable juror could have inferred the existence of a municipal policy" that caused the violation of a constitutional right). Further, plaintiff has submitted no evidence that the City of Mount Vernon failed to train or supervise the officers involved in the incidents, or in any way exhibited "deliberate indifference" to the rights of those with whom the officers would come into contact. Plaintiff's "conclusory allegations claiming that a lack of training contributed to plaintiff's rights being violated is not enough to state a valid § 1983 claim." Scott v. Sinagra, 167 F. Supp.2d 509, 514 (N.D.N.Y. 2001) (citing Butler v. Castro, 896 F.2d 698, 700 (2d Cir. 1990)). Accordingly,

the claims against the City of Mount Vernon are dismissed.

As to plaintiffs' claims against the individual defendants in their official capacities, "[s]uits against government agents in their official capacities do not differ in substance from suits against municipalities, and therefore the same limitations on liability apply." Hamilton v. New Haven, 213 F. Supp.2d 125, 132 (D. Conn. 2002). As stated above, plaintiffs have offered no evidence that the individual defendants acted pursuant to a municipal policy or custom. Accordingly, plaintiff's claims against the individual officers in their official capacities are also dismissed.

## V. FIRST AMENDMENT RETALIATION

On or about February 25, 2004, plaintiff filed a civilian complaint with the Mount Vernon Police Department against Detective Koehnlein, Officer Hutchins and Detective Vanderpool regarding plaintiff's arrest on February 4, 2004. Plaintiff presently alleges that defendants arrested him on March 13, 2004, March 23, 2004, July 6, 2005 and November 30, 2005 in retaliation for his civilian complaint. Plaintiff also alleges that Officer Guttman arrested him on November 14, 2003 in retaliation for his exercise of his First Amendment right to protest the interrogation of his niece.

In order to succeed on his retaliation claims, plaintiff must demonstrate: (1) that the speech or conduct at issue is protected under the First Amendment; (2) that the defendants took adverse action against him; (3) that there was a causal connection between plaintiff's protected conduct and the adverse action, and (4) that the defendants' action chilled the exercise of plaintiff's First Amendment right. See Scott v. Coughlin, 344 F.3d 282, 287 (2d Cir. 2003) (first three elements); Curley v. Village of

Suffern, 268 F.3d 65, 73 (2d Cir. 2001) (requirement that the exercise of First Amendment right is "actually chilled").  Here, in the first instance, plaintiff proffers no evidence that any of the defendant officers were aware that plaintiff filed a civilian complaint.  Thus, as to the alleged retaliation based upon plaintiff's filing a civilian complaint, plaintiff fails to establish the necessary causal connection.  Moreover, plaintiff fails to proffer evidence of even one example of a situation in which he desired to exercise his First Amendment rights but was chilled by defendants' alleged actions.  Further, there is no evidence in the record to support a finding that defendants' alleged conduct has deterred plaintiff from engaging in free speech or seeking judicial redress.  Accordingly, plaintiff's First Amendment retaliation claims are dismissed.

## VI. FALSE ARREST

Plaintiff alleges claims for false arrest arising from each of his six separate encounters with members of the Mount Vernon Police Department.  A claim for false arrest under § 1983 is substantially the same as a claim for false arrest under New York law.  See Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996).  In order to succeed on his false arrest claims, plaintiff must demonstrate that the defendant in question "intentionally confined [plaintiff] without his consent and without justification."  See Escalera v. Lynn, 361 F.3d 737, 743 (2d Cir. 2004) (quotation and citation omitted).  Plaintiff may establish an intent to confine by presenting evidence that "the defendant must have either: (1) confined or intended to confine the plaintiff; or (2) affirmatively procured or instigated the plaintiff's arrest."  See King v. Crossland Savings Bank, 111 F.3d 251, 256 (2d Cir. 1997).  As to the requirement of absence of justification for the

arrest, it is well-settled that the existence of probable cause is a complete defense to an action for false arrest. See Jaegly v, Couch, 439 F.3d 149, 152 (2d Cir. 2006). Probable cause exists where police officers "have knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." See Panetta v. Crowley, 460 F.3d 388, 395 (2d Cir. 2006) (quotation and citation omitted).

### A. Individual Liability Under 42 U.S.C. § 1983

In order to establish personal liability under 42 U.S.C. §1983, plaintiff must prove, *inter alia*, that the defendant caused the deprivation of plaintiff's rights. See Taylor v. Brentwood Union Free Sch. Dist., 143 F.3d 679, 685 (2d Cir. 1998) (citation omitted). The Second Circuit has delineated several ways in which a defendant may be personally involved in a constitutional deprivation so as to be liable under §1983: (1) "[t]he defendant may have directly participated in the infraction"; (2) "[a] supervisory official, after learning of the violation through a report or appeal, may have failed to remedy the wrong"; (3) "[a] supervisory official may be liable because he or she created a policy or custom under which unconstitutional practices continue"; (4) "a supervisory official may be personally liable if he or she was grossly negligent in managing subordinates who caused the unlawful condition or event." Williams v. Smith, 781 F.2d 319, 323-24 (2d Cir. 1986).

#### 1. *February 2. 2004: Officer Hutchins and Detective Koehnlein*

Plaintiff alleges that he was falsely arrested on February 2, 2004 by defendants Hutchins, Koehnlein, Perry, Vanderpool and Castelhano. As to defendants Hutchins

12

and Koehnlein, however, the record is clear that they arrested Gordon Tarrant; plaintiff was later arrested by Vanderpool and Castelhano. The record is devoid of any evidence from which a reasonable jury could infer that either Hutchins or Koehnlein participated in, procured or instigated plaintiff's arrest. Accordingly, plaintiff's false arrest claims arising out of the February 2, 2004 incident against defendants Hutchins and Koehnlein are dismissed.

### 2  March 23, 2004: Officer Hutchins

Plaintiff alleges that he was falsely arrested on March 23, 2004 by defendants Hutchins, Koehnlein, Castelhano and Driscoll. As to defendant Hutchins, however, a review of the record indicates that his only connection to the incident in question was the fact that he was on surveillance with Detective Thompson. According to the record, Detective Thompson (who is not a defendant) observed the alleged transaction between plaintiff and Tolliver and forwarded her observations to the "pick-up" team. The record is devoid of any evidence that Hutchins witnessed that alleged transaction, communicated any information to the other officers or otherwise participated in or instigated plaintiff's arrest. Accordingly, plaintiff's false arrest claim arising out of the March 23, 2004 incident against defendant Hutchins is dismissed.

### B. Qualified Immunity: The "Pick-Up" Teams

Plaintiff alleges false arrest claims against all of the officers who participated in the "pick-up" teams on February 4, 2004, March 3, 2004, March 23, 2004 and July 6, 2005. Said defendants, however, are protected by the doctrine of qualified immunity:

[A] police officer is entitled to qualified immunity if it was objectively

13

> reasonable for him to believe that his actions did not violate plaintiff's clearly established rights. A police officer is entitled to rely on the contents of a fellow officer's radio report and to presume that a statement alleging criminality is justified by probable cause. Therefore, while an arrest may be found unconstitutional if probable cause was in fact lacking, an officer who participates in the arrest in nonetheless immune from suit in his or her individual capacity under the doctrine of qualified immunity if it was objectively reasonable for him to rely on a fellow officer's report indicating the existence of probable cause.

Annunziata v. City of New York, No. 06 Civ. 7637, 2008 WL 2229903, at *4 (S.D.N.Y. May 28, 2008) (quotation and citation omitted).

Here, as to each of the four incidents in question, the surveillance officer observed what he believed to be a drug transaction and radioed information to the respective "pick-up" teams, including the description and location of the participants in the alleged transactions. In each instance, as a result of the surveillance officers' communications, a "pick-up" team arrested and/or detained plaintiff. Plaintiff does not argue that his appearance on any of the days in question did not match the description provided to the particular "pick-up" team. Nor does plaintiff offer any evidence to prove that any member of any "pick-up" team had reason to disbelieve the surveillance officer's information regarding his observations of the alleged drug transaction in question or the description and location of the suspects. Thus, it was objectively reasonable for the "pick-up" teams to believe they had probable cause to arrest plaintiff. Accordingly: (1) plaintiff's false arrest claims arising out of the February 4, 2004 incident against defendants Vanderpool and Castelhano are dismissed; (2) plaintiff's false arrest claim arising out of the March 3, 2004 incident against defendant Connley is dismissed; (3) plaintiff's false arrest claims arising out of the March 23, 2004 incident against

14

defendants Koehnlein, Castelhano and Driscoll are dismissed; and (4) plaintiff's false arrest claims arising out of the July 6, 2005 incident against defendants Hutchins and Connley are dismissed.

## VII. MALICIOUS PROSECUTION

Plaintiff alleges malicious prosecution claims arising from the incidents on November 14, 2003, February 4, 2004 and March 3, 2004. In order to establish a § 1983 claim for malicious prosecution, plaintiff must demonstrate (1) that defendants initiated a prosecution against her, (2) that defendants lacked probable cause to believe the proceeding could succeed, (3) that defendants acted with malice, (4) that the prosecution terminated in her favor and (5) that there was a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights. See Rohman v. New York City Transit Auth., 215 F.3d 208, 215 (2d Cir. 2000).

### A. February 4, 2004 and March 3, 2004

As to the first element of a malicious prosecution claim, "[t]here is a presumption that a prosecutor exercises independent judgment in deciding whether to initiate and continue a criminal proceeding." See Brome v. City of New York, No. 02 Civ. 7184, 2004 WL 502645, at *5-6 (S.D.N.Y. Mar. 15, 2004). Plaintiff may overcome the presumption by "demonstrating that the defendant played an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act." See Espada v. Schneider, 522 F. Supp.2d 544, 553 (S.D.N.Y. 2007).

> Applying these principles to claims against police officers, courts have found a triable issue of fact as to the initiation element where the defendant-officer brought formal charges and had the person arraigned,

15

> filled out complaining and corroborating affidavits, swore to and signed a felony complaint, or created false information and forwarded it to prosecutors.

Id. Here, the record is devoid of evidence that any named defendant initiated, continued or played an active role in the prosecutions arising from the incidents on February 4, 2004 and March 3, 2004. Accordingly, plaintiff's malicious prosecution claims arising from the February 4, 2004 and March 3, 2004 incidents are dismissed.

## VIII. REMAINING CLAIMS

As to the remaining claims, a review of the entire record indicates numerous triable factual issues including, but not limited to, whether defendants had probable cause to arrest plaintiff on November 14, 2003, February 4, 2004 and March 3, 2004, and whether plaintiff was "seized" within the meaning of the Fourth Amendment on July 6, 2005 and November 30, 2005. Accordingly, defendants' motions are **denied in all other respects**.

## IX. CONCLUSION

For the reasons stated above, defendants' motion for summary judgment is **GRANTED IN PART** and the following claims are dismissed: (1) all claims against John and Jane Does 1-8; (2) all claims against the City of Mount Vernon; (3) all claims against the individual officers in their official capacities; (4) all First Amendment retaliation claims; (5) all malicious prosecution claims arising from the February 4, 2004 and March 3, 2004 incidents; (6) all false arrest claims arising from the March 23, 2004 incident; (7) the false arrest claims arising from the February 4, 2004 incident against

defendants Hutchins, Koehnlein, Vanderpool and Castelhano; (8) the false arrest claim arising from the March 3, 2004 incident against defendant Connley; and (9) the false arrests claims arising from the July 6, 2005 incident against defendants Hutchins and Connley. Thus, **summary judgment is denied as to the following claims**: (1) the false arrest and malicious prosecution claims against Officer Guttman arising from the November 14, 2003 incident; (2) the false arrest claim against Officer Perry arising from the February 4, 2004 incident; (3) the false arrest claim against Officer Della Donna arising from the March 3, 2004 incident; (4) the false arrest claim against Detective Driscoll arising from the July 6, 2005 incident; and (5) the false arrest claim against Officer Hutchins arising from the November 30, 2005 incident.

Dated: September 30, 2008
White Plains, NY

**SO ORDERED:**

_____
GEORGE A. YANTHIS, U.S.M.J.